**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARYL WILLIAMS,** : | | |
| : | | |
| **Plaintiff** : | | |
| : | | |
| v. : | **CIVIL NO. 3:CV-12-2440** | |
| : | | |
| **PENNSYLVANIA DEPARTMENT OF** : | **(Judge Caputo)** | |
| **CORRECTIONS at SCI CAMP HILL,** : | | |
| *et al.,* : | | |
| : | | |
| **Defendants** : | | |

**M E M O R A N D U M**

## I. Introduction

Daryl Williams, a state inmate formerly housed at SCI-Camp Hill, in Camp Hill, Pennsylvania,[1] files this *pro se* civil rights action alleging that prison officials and medical staff violated his Eighth Amendment rights when they failed to perform recommended imaging studies of his injured neck. (Doc. 1, Compl.) Mr. Williams names the following as defendants: the Pennsylvania Department of Corrections (DOC); John Wetzel, DOC's Secretary; Jeffrey Ditty, SCI-Camp Hill's Superintendent; Teresa Law, Corrections Health Care Administrator (CHCA); Prison Health Services (PHS), SCI-Camp Hill's contract medical care provider; and Dr. John Doe, PHS's chief medical officer at SCI-Camp Hill. Mr. Williams has also filed an application to proceed *in forma pauperis*. (Doc. 7.)

---

[1] Mr. Williams is presently housed at Alle Kiski Pavillion in Arnold, Pennsylvania. (Doc. 6, Notice of Change of Address.)

The Complaint is before the court for preliminary screening pursuant to 28 U.S.C. § 1915A and 28 U.S.C. § 1915(e)(2)(B). Upon screening the Complaint, the court will grant Mr. Williams' motion to proceed *in forma pauperis* (Doc. 7), but dismiss the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) due to Mr. Williams' failure to state a claim on which relief may be granted against the named defendants. Mr. Williams, however, will be granted leave to file an amended complaint to identify those SCI-Camp Hill prison and/or medical professionals who allegedly violated his Eighth Amendment rights by denying him prompt and adequate medical treatment for his neck injury.

## II.    Background

In May 2011, while housed at SCI-Camp Hill, Mr. Williams fell down a flight of stairs fracturing his head, neck, shoulders and arm. (Doc. 1, Compl. at ¶¶ 8-9.) In August 2011, he was seen by a "bone specialist" who recommended he receive a "CAT scan and MRI for surgery." (*Id*., ¶ 10.) Mr. Williams remained at SCI-Camp Hill for four months after seeing the "bone specialist," yet he never received the recommended "MRI, CAT scan, or surgery" despite his deteriorating neurological status. (*Id*., ¶ 11.) Mr. Williams claims PHS maintains a practice of utilizing the least expensive treatment whenever possible to address prisoner medical issues in order to save money. (*Id*., ¶¶ 13-14.) Mr. Williams seeks compensatory and punitive damages from the defendants.

## III. Standard of Review

When a litigant seeks to proceed *in forma pauperis,* without the prepayment of fees, 28 U.S.C. § 1915, requires the court to screen a compliant. Likewise, when a prisoner seeks redress from a government defendant in a civil action, whether proceeding *in forma pauperis* or not, the court is mandated to screen the complaint. *See* 28 U.S.C. § 1915A. Both 28 U.S.C. § 1915(e)(2)(B) and § 1915(A) give the court the authority to dismiss a complaint if it is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(i)-(iii); 28 U.S.C. § 1915A(b)(1)-(2).

A complaint is frivolous if it lacks an arguable basis either in law or fact. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003)(citing *Neitzke v. Williams*, 490 U.S. 319, 327-28, 109 S.Ct. 1827, 1832-33, 104 L.Ed.2d 338 (1989)). In deciding whether the complaint fails to state a claim on which relief may be granted, the court employs the standard used to analyze motions to dismiss under Fed. R. Civ. P. 12(b)(6). *See Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000). Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008)). The court may also rely on exhibits attached to the complaint and matters of public record. *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007).

Pursuant to Fed. R. Civ. P. 8(a), a complaint need only "include a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." "[T]he factual allegations of a complaint 'must be enough to raise a right to relief above the speculative level' and the complaining party must offer 'more than labels and conclusions' or 'formulaic recitation of the elements of a cause of action.'" *W. Run Student Hous. Assocs., LLC. v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir. 2013)(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007)). Legal conclusions are "not entitled to the assumption of truth." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012)(citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

Finally, we note that *pro se* pleadings are held to a less stringent standard than formal pleadings drafted by attorneys and are to be liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94, 127 S.Ct. 2197, 2200, 167 L.Ed.2d 1081 (2007); *Giles v. Kearney*, 571 F.3d 318, 322 (3d Cir. 2009). *Pro se* litigants are to be granted leave to file a curative amended complaint even when a plaintiff does not seek leave to amend, unless such an amendment would be inequitable or futile. *See Philips*, 515 F.3d at 245-46 (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)). However, a complaint that sets forth facts which affirmatively demonstrate that the plaintiff has no right to recover is properly dismissed without leave to amend. *Grayson v. Mayview State Hospital*, 293 F.3d 103, 106 (3d Cir. 2002).

### IV. Discussion

#### A. The Department of Corrections and SCI-Camp Hill are not "persons" for the purposes of a § 1983 action.

To state a § 1983 claim, a plaintiff must plead two essential elements: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009).

Mr. Williams claims against the Pennsylvania Department of Corrections (DOC) and SCI-Camp Hill are subject to dismissal as they are not "persons" amendable to suit under 42 U.S.C. § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71, 109 S.Ct. 2304, 2312, 105 L.Ed.2d 45 (1989); *Pettaway v. SCI Albion*, 487 F. App'x 766, 768 (3d Cir. 2012). Furthermore, Mr. Williams will not be granted leave to amend his claims against these defendants as doing so would be futile.

#### B. Mr. Williams' Eighth Amendment Claim of Deliberate Indifference to his Serious Medical Needs.

#### 1. Eighth Amendment Standard

To establish an Eighth Amendment medical claim, a plaintiff must show "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need." *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003); *see also Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir.

1999). A serious medical need is one that has been diagnosed by a physician as requiring treatment, or one that is so obvious that a layperson would recognize the need for a doctor's attention. *Monmouth Cnty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987). In addition, "if 'unnecessary and wanton infliction of pain' results as a consequence of denial or delay in the provision of adequate medical care, the medical need is of the serious nature contemplated by the eighth amendment." *Id.* (quoting *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976)). Therefore, deliberate indifference may be manifested by an intentional refusal to provide medical care, delayed medical treatment for non-medical reasons, a denial of prescribed medical treatment, or a denial of reasonable requests for treatment that results in suffering or risk of injury. *Durmer v. O'Carroll*, 991 F.2d 64, 68 (3d Cir. 1993); *see also Spruill v. Gillis*, 372 F.3d 218, 235 (3d Cir. 2004) (quoting *White v. Napolean*, 897 F.2d 103, 109 (3d Cir. 1990) (finding "deliberate indifference to serious medical needs" standard is met when pain is intentionally inflicted on a prisoner, where the denial of reasonable requests for medical treatment exposes an inmate to undue suffering or the threat of tangible residual injury, or when, despite a clear need for medical care, there is an intentional refusal to provide that care)).

A finding of deliberate indifference must be based on what an official actually knew, rather than what a reasonable person should have known. *See Beers–Capitol v. Whetzel*, 256 F.3d 120, 131 (3d Cir. 2001). A prison official acts with deliberate indifference to an inmate's serious medical needs when he "knows of

and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837, 114 S.Ct. 1970, 1979, 128 L.Ed.2d 811 (1994). "If a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill,* 372 F.3d at 236. Accordingly, absent a belief or actual knowledge that medical personnel mistreated or failed to treat a prisoner, the non-medical defendants cannot be charged with the Eighth Amendment scienter requirement of deliberate indifference. *Id*. Deliberate indifference, however, can be established by a prison official's "intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed*." Estelle*, 429 U.S. at 104-05, 97 S.Ct. at 291.

An inmate's mere disagreement with medical professionals "as to the proper medical treatment" of his medical complaint does not support an Eighth Amendment violation. See *Monmouth Cnty. Corr. Inst. Inmates*, 834 F.2d at 346. Likewise, a claim that a doctor or medical department was negligent does not rise to the level of an Eighth Amendment violation simply because the patient is a prisoner. *Estelle*, 429 U.S. at 106, 97 S.Ct. at 292. Accordingly, a "medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice." *Estelle*, 429 U.S. at 107, 97 S.Ct. at 293. Also, a doctor's disagreement with another doctor's professional judgment is not actionable under the Eighth Amendment. See *White,* 897 F.2d at 110. In sum, negligence,

unsuccessful medical treatment, or medical malpractice do not give rise to a § 1983 cause of action, and an inmate's disagreement with medical treatment is insufficient to establish deliberate indifference. *See Spruill,* 372 F.3d at 235; *see also Durmer,* 991 F.2d at 69.

Additionally, a section 1983 claim cannot be premised on a theory of *respondeat superior.* In order to establish liability for the deprivation of a constitutional right, a party must show the personal involvement of each defendant. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948; *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). "It is uncontested that a government official is liable only for his or her own conduct and accordingly must have had some sort of personal involvement in the alleged unconstitutional conduct." *Argueta v. U.S. I.C.E.*, 643 F.3d 60, 71-72 (3d Cir. 2011). This personal involvement can be shown where a defendant personally directs the wrongs, or has actual knowledge of the wrongs and acquiesces in them. *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988); *A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004)(noting that "a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations"). A defendant "cannot be held responsible for a constitutional violation which he or she neither participated in nor approved." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 201-202 (3d Cir. 2000).

### 2. Mr. Williams Fails to State Eighth Amendment Claim against Secretary Wetzel, Superintendent Ditty, and CHCA Teresa Law.

The Third Circuit Court of Appeals has held that Superintendents and CHCAs are "undisputably administrators, [and] not doctors." *Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005). Thus, it is clear that Secretary Wetzel, Superintendent Ditty and CHCA Law are non-medical prison personnel in the sense that they are not responsible for directly rendering medical care to Mr. Williams. Thus, in order to state an Eighth Amendment claim of deliberate indifference against them, Mr. Williams must show that they possessed actual knowledge or a reason to believe that "prison doctors or their assistants [were] mistreating (or not treating)" him. *Spruill*, 372 F.3d at 326.

Mr. Williams' only mention of Secretary Wetzel, Superintendent Ditty and CHCA Law is in conjunction with the conclusory statement that they were deliberately indifferent to his medical needs because they knew of PHS's practice of withholding necessary medical care from prisoners so they could maximize their profits. (Doc. 1, ¶¶14-16.) However, Mr. Williams does not allege that any of these defendants knew or should have known that his treating physicians were mistreating him, or withholding medical care from him, for such nefarious reasons. Mr. Williams' statement that hundreds of SCI-Camp Hill inmates have filed grievances and lawsuits against PHS does not suggest how or why Secretary Wetzel, Superintendent Ditty, or CHCA Law knew, or should have known, that PHS was withholding medically necessary diagnostic tests or procedures from him for non-

medical reasons, or that his medical needs were not being properly addressed.

Likewise, Mr. Williams cannot assert an Eighth Amendment claim against these defendants based on their administrative titles, or supervisory roles, within SCI-Camp Hill's chain-of-command. As noted above, prison officials may not be held responsible for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *Argueta*, 643 F.3d at 72.

Clearly, Mr. Williams' claims against these defendants are based on their supervisory positions within the prison and unsupported allegations of imputed and assumed knowledge, and speculative tolerance of past misbehavior by PHS's practice of withholding medically necessary care for purely financial reasons. These allegations are insufficient to set forth an Eighth Amendment claim against Secretary Wetzel, Superintendent Ditty, or CHCA Law. Mr. Williams claims against these defendants, as set forth in the Complaint, are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii).

### 3. Mr. Williams Fails to State a Claim against PHS.

According to the Complaint, PHS holds a contract with SCI-Camp Hill to provide medical care for inmates incarcerated there. (Doc. 1, ¶14.) Mr. Williams alleges that Dr. John Doe,[2] an employee of PHS, and PHS denied him medically necessary imaging studies and treatment for his fractured neck for purely economic reasons. (*Id*., ¶¶14-16.) Specifically, he alleges Dr. Doe and PHS have a practice

---

[2] Mr. Williams has yet to identify who his treating physician(s) was while he was housed at SCI-Camp Hill.

-10-

and policy of "choosing the least costly medical treatment of prisoners in order to make the highest profit at the detriment of inmate health". (*Id.*, ¶ 14.) This is Mr. Williams' sole explanation of why the "bone specialist['s]" recommendations that he receive a CAT scan and MRI were not followed during the four month period he remained at SCI-Camp Hill.

A private corporation, such as PHS, may be sued under § 1983 for actions taken under color of state law that deprive a prisoner of adequate medical care. *Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583-84 (3d Cir. 2003). However, PHS cannot be held responsible for the acts of its employees under a theory of *respondeat superior*. See *Monell v. New York City Dep't of Soc. Serv.*, 436 U.S. 658, 691-94, 98 S.Ct. 2018, 2035-38, 56 L.Ed.2d 611 (1978); *see also Afdahl v. Cancellierie,* 463 F. App'x 104, 109 (3d Cir. 2012) (nonprecedential). Instead, to establish liability against PHS, Mr. Williams must demonstrate that he suffered a violation of his federal rights because of a PHS policy, practice, or custom.³ *See Natale*, 318 F.3d at 583-84; *see also C.N. v. Ridgewood Bd. of Educ.*, 430 F.3d 159, 173 (3d Cir. 2005). After establishing that a policy or custom exists, a

---

³ For purposes of meeting this standard, a policy exists when a municipal decision-maker with final authority issues an official proclamation. *Kelly v. Borough of Carlisle*, 622 F.3d 248, 263 (3d Cir. 2010). A custom exists when "practices of state officials [are] so permanent and well settled as to virtually constitute law." *Id.* (internal citations omitted). To prove policy or custom, a plaintiff must show "that a [decision-maker] is responsible either for the policy or, through acquiescence, for the custom." *Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 193 (3d Cir. 2009).

*Kean v. Henry*, No. 12-1756, 2013 WL 1802632, *2 (3d Cir. Apr. 30, 2013).

-11-

plaintiff must satisfy the causation requirement by demonstrating that the policy or custom was the moving force behind the injury alleged. *Watson v. Abington Twp.*, 336 F. App'x 163, 167 (3d Cir. 2009).

Here, Mr. Williams asserts that PHS has a policy, custom, and practice of putting profits ahead of the medical needs of prisoners for whom they are contracted to provide medical care. The Third Circuit Court of Appeals has held that a mere claim that cost was taken into account when denying a prisoner's medical procedure does not per se establish the subjective component of an Eighth Amendment claim. In *Winslow v. Prison Health Services*, 406 F. App'x 671 (3d Cir. 2011), the court held that "the naked assertion that Defendants considered cost in treating Winslow's hernia does not suffice to state a claim for deliberate indifference, as prisoners do not have a constitutional right to limitless medical care, free of the cost constraints under which law-abiding citizens receive treatment." *Winslow*, 406 F. App'x at 674. Here, even if the court assumes, as we must, that PHS considered costs when determining Mr. Williams' appropriate course of medical treatment while he was housed at SCI-Camp Hill, he has not alleged that they wantonly or recklessly disregarding a substantial risk to his health or safety. He does not suggest he did not receive any medical care for his injuries. Rather, as set forth in the Complaint, he avers that his treating PHS physician did not order imaging tests recommended by another physician for four months for financial reasons. These allegations fail to set forth an Eighth Amendment claim against PHS.

**C. Leave to Amend.**

"[I]f a complaint is vulnerable to [Rule] 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Phillips*, 515 F.3d at 236. In this instance, the Court believes that any amendment to Mr. Williams' claim against the DOC or SCI-Camp Hill would be futile. However, with respect to Mr. Williams' Eighth Amendment medical claim against PHS and other medical professionals who treated him, or failed to treat him, it is possible that the deficiencies noted may be remedied by amendment. Thus, Mr. Williams will be granted twenty-one days to file an amended complaint. If Mr. Williams decides to file an amended complaint, he is advised that it must contain the same docket number as the instant action and should be labeled "Amended Complaint." In addition, the "amended complaint must be complete in all respects. It must be a new pleading which stands by itself as an adequate complaint without reference to the complaint already filed." *Young v. Keohane*, 809 F.Supp. 1185, 1198 (M.D. Pa. 1992). Mr. Williams is advised that any amended complaint he may file supersedes the original complaint and his amended complaint and must be "retyped or reprinted so that it will be complete in itself including exhibits." M.D. Pa. LR 15.1. Consequently, all causes of action alleged in the amended complaint which are not alleged in the amended complaint are waived.

Mr. Williams is also advised that his amended complaint must be concise and direct. *See* Fed. R. Civ. P. 8(d). Each allegation must be set forth in an individually numbered paragraphs in short, concise and simple statements. *Id.* The allegations

-13-

should be specific as to time and place, and should identify the specific person or persons responsible for the deprivation of his constitutional rights and what each individual did that led to deprivation of his rights. *Iqbal*, 556 U.S. at 676, 129 S.Ct. at 1948. He also shall specify the relief he seeks with regard to each claim. Mr. Williams's failure to file an appropriate amended complaint within the required time will result in his claim being dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) due to his failure to state a claim on which relief may be granted.

      An appropriate Order follows.

                                              /s/ A. Richard Caputo
                                              **A. RICHARD CAPUTO**
                                              **United States District Judge**

**Date: June 24 , 2013**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARYL WILLIAMS,** | : | |
| Plaintiff | : | |
| v. | : | CIVIL NO. 3:CV-12-2440 |
| **PENNSYLVANIA DEPARTMENT OF CORRECTIONS at SCI CAMP HILL,** *et al.*, | : | (Judge Caputo) |
| Defendants | : | |

# O R D E R

**AND NOW**, this ⎵24th⎵ day of **JUNE, 2013**, in accordance with the accompanying memorandum, it is **ORDERED** that:

1. Mr. Williams' Motion for leave to proceed *in forma pauperis* (Doc. 7) is construed as a motion to proceed without full prepayment of fees and costs, and is **GRANTED**.

2. Mr. Williams' claims against the Department of Corrections, SCI-Camp Hill, Secretary Wetzel, Superintendent Ditty, CHCA Law and Prison Health Services, Inc. are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim for which relief can be granted.

3. Within twenty-one (21) days from the date of this order, Plaintiff may file an amended complaint in this action in accordance with the foregoing Memorandum.

4. The Clerk of Court shall forward to Plaintiff two (2) copies of this Court's prisoner civil-rights complaint form which Plaintiff shall use in preparing any amended complaint he may file.

5. Failure to file an amended complaint as directed within the required time will result in this action being dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for the reasons set forth in the accompanying Memorandum.

    /s/ A. Richard Caputo
**A. RICHARD CAPUTO**
**United States District Judge**